UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
-----------------------------x
NORTH AMERICAN               :
TECHNICAL SERVICES, INC.,    :
                             :
          Plaintiff,         :
                             :            Civil Action No.
          v.                 :            10 CV 1384 (AWT)
                             :
V.J. TECHNOLOGIES, INC.,     :
                             :
          Defendant.         :
-----------------------------x
```

## ORDER RE MOTION TO DISMISS

The plaintiff, North American Technical Services, Inc., has brought this action against V.J. Technologies, Inc., setting forth claims for breach of contract (First Count), breach of the covenant of good faith and fair dealing (Second Count), unjust enrichment (Third Count), quantum meruit (Fourth Count), promissory estoppel (Fifth Count), fraudulent misrepresentation (Sixth Count), negligent misrepresentation (Seventh Count), violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a *et seq.* ("CUTPA") (Eighth Count), and unfair competition (Ninth Count).  The defendant has moved to dismiss the plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b).  For the reasons set forth below, the motion is being granted as to the Third and Fourth Counts, with leave to replead, and denied as to the remaining counts.

1

## I.   LEGAL STANDARD

When deciding a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atlantic Corp. v. Twombly, 550 U.S. 550, 555 (2007) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986))(on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009)(quoting Twombly, 550 U.S. at 557).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact)."  Id. (internal citations omitted).  However, the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face."  Id. at 1974.  "The function of a motion to dismiss is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the

evidence which might be offered in support thereof.'" <u>Mytych v. May Dept. Store Co.</u>, 34 F. Supp. 2d 130, 131 (D. Conn. 1999) (quoting <u>Ryder Energy Distribution v. Merrill Lynch Commodities, Inc.</u>, 748 F.2d 774, 779 (2d Cir. 1984)).  "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims."  <u>United States v. Yale New Haven Hosp.</u>, 727 F. Supp. 784, 786 (D. Conn. 1990) (citing <u>Scheuer</u>, 416 U.S. at 232).

In its review of a motion to dismiss for failure to state a claim, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken."  <u>Samuels v. Air Transp. Local 504</u>, 992 F.2d 12, 15 (2d Cir. 1993).

When alleging fraud or mistake, a plaintiff bears the additional burden of stating "with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  The plaintiff must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent."  <u>Harsco Corp. v. Segui</u>, 91 F.3d 337, 347 (2d Cir. 1996).  "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R.

Civ. P. 9(b).

## II. DISCUSSION

### A. <u>Choice-of-Law</u>

The defendant argues that New York law should be applied to the plaintiff's contracts and torts claims.  Because many of the defendant's arguments in support of its motion to dismiss rely on New York law, the court addresses the choice-of-law analysis as an initial matter.

In a diversity action, a federal court applies the choice-of-law rules of the forum state.  <u>Greystone Comty. Reinvestment Ass'n, Inc. v. Berean Capital, Inc.</u>, 638 F. Supp. 2d 278, 286 (D. Conn. 2009).  "In Connecticut, the Court must select the local law of the state having 'the most significant relationship' to the occurrence and the parties to the dispute."  <u>Id.</u>  Connecticut follows the Restatement (Second) of Conflicts of Laws in making this determination.  <u>Reichhold Chemicals, Inc. v. Hartford Accident And Indemn. Co.</u>, 243 Conn. 401, 413 (1997).  The Restatement (Second) articulates "seven overarching considerations in determining which state has the 'most significant relationship."[1]  <u>Id.</u> at 409.  There are "five

---

[1] The factors to be considered are:
(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and

contacts to be considered in applying the [factors] . . . to a contract dispute."[2]  Id.  There are four contacts to be considered in applying the factors to a torts dispute, which "are to be evaluated according to their relative importance with respect to the particular issue."[3]  O'Connor v. O'Connor, 101 Conn. 632, 652 (1986).  Application of these factors requires a court to make a fact intensive inquiry regarding the circumstances of the individual case.

Here, there are factual disputes with respect to issues material to the choice of law analysis.  The defendant, for example, argues that the letter acknowledging the parties' agreement was signed in New York because the letterhead lists the defendant's New York address.  The plaintiff, however, alleges that the letter was signed at the defendant's office in

---

(g) ease in the determination and application of the law to be applied.
Restatement (Second) of Conflicts of Laws § 6(2).

[2]The five contacts to be considered in a contract dispute are:
(a) the place of contracting,
(b) the place of negotiation of the contract,
(c) the place of performance,
(d) the location of the subject matter of the contract, and
(e) the domicile, residence, nationality, place of incorporation and place of business of the parties.
Restatement (Second) of Conflicts of Laws § 188(2)

[3]The four contacts to be considered in a torts dispute are:
(a) the place where the injury occurred,
(b) the place where the conduct causing the injury occurred,
(c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
(d) the place where the relationship, if any, between the parties is centered.
Restatement (Second) of Conflicts of Laws § 145(2).

Connecticut.  Because of the "fact-intensive and context specific" nature of the choice of law analysis and the complexity of the instant case, it is premature to address choice of law at the motion to dismiss stage.  Graboff v. The Collern Firm, No. 10-1710, 2010 WL 4456923 at *8 (E.D. Pa. Nov 8, 2010) ("[C]onducting a . . . choice of law analysis is fact-intensive and context specific.  Due to the complexity of this analysis when confronted with a choice of law issue at the motion to dismiss stage, courts . . . have concluded that it is more appropriate to address the issue at a later stage in the proceedings."); see also Speedmark Transp., Inc. v. Mui, No. 11 Civ. 0722 (AJP), 2011 WL 1533042 at *4 (S.D.N.Y. Apr. 21, 2011) ("[A] choice-of-law determination is premature on this motion to dismiss, since the record lacks facts necessary to conduct the context-specific . . . analysis required."); Arroyo v. Milton Acad., No. 5:10-cv-117, 2011 WL 65938 at *3 (D. Vt. Jan. 10, 2011) (finding that the Restatement (Second) of Conflicts, employs "a fact intensive inquiry into the interests of the various fora and their relationships with the parties involved, as well as assessments of the policy implications of applying the law of one jurisdiction over another" and therefore "it would be premature to resolve these complex questions before the completion of discovery.").

B. **First Count - Breach of Contract**

The defendant argues that the plaintiff's breach of contract claim should be dismissed for three reasons: first, that the parties had no contract; second, that even if there was a contract, the New York Statute of Frauds applies and makes the contract unenforceable; and third, that even if the parties had an enforceable contract, there was no breach because the defendant submitted its final bid to the plaintiff's agent, Sung Woo.  Because the allegations in the Complaint are sufficient, viewed in the light most favorable to the plaintiff, to support a breach of contract claim, the motion to dismiss the First Count is being denied.

The defendant argues that the alleged contract between the parties fails for lack of definiteness because it does not identify the parties' respective obligations, omits essential terms, such as compensation, and is so vague and indefinite that its terms cannot be discerned.  In Connecticut,

> [t]o be enforceable, an agreement must be definite and certain as to its terms and requirements.  Whether and on what terms a contractual commitment has been undertaken are ultimately questions of fact for the trier of facts. A manifestation of mutual assent may be made even though neither offer nor acceptance can be identified and even though the moment of formation cannot be determined.

Presidential Capital Corp. v. Reale, 231 Conn. 500, 506-07 (1994) (internal citations and quotation marks omitted).  "Moreover, the defendant's promise to pay a commission is not made unenforceable

merely because he did not include the amount of the commission. We have long held that an agreement will not be rejected if the missing terms can be ascertained, either from its express terms or by fair implication." Id. at 507-08.

Here, the plaintiff has alleged that it had an oral agreement with the defendant which was later confirmed in a letter dated August 20, 2007.  The letter "appoints [the plaintiff] as the lead team with exclusivity in the sales process for the project," and further states that the plaintiff "will take the lead" on all sales and pricing issues.  Furthermore, the Complaint alleges that the plaintiff and the defendant have had prior agreements, which could establish a course of dealing between the parties.  So long as a trier of fact can ascertain missing terms, including the amount of the plaintiff's commission, the agreement will not be rejected for lack of definiteness.

The defendant argues that the alleged contract between the parties is unenforceable because it does not comply with the New York Statute of Frauds.  New York Gen. Obl. Law § 5-701(10) requires that commission agreements concerning the finding and brokerage of business opportunities and inventory sales be in writing.  In contrast, the Connecticut Statute of Frauds has no such requirement.  As discussed above, it is premature to determine whether New York law, as opposed to Connecticut law,

8

applies.[4]

The defendant argues that even if there was a contract, there was no breach because it submitted its final bid to Sung Woo, the plaintiff's agent in South Korea.  The defendant relies on agency principles to argue that Sung Woo had either actual or apparent authority to waive the plaintiff's right to compensation.  "Actual authority exists when an agent's action is expressly authorized by resolution of the [principal][,] is impliedly authorized by the [principal] or although not authorized, is subsequently ratified by the [principal]."  Maharishi Sch. of Vedic Sci., Inc. v. Connecticut Constitution Assoc. Ltd. P'ship, 260 Conn. 598, 606-07 (2002)(citation and internal quotation marks omitted).  Nothing in the Complaint describes the extent of Sung Woo's actual authority.  Drawing all reasonable inferences in the plaintiff's favor, the allegations in the Complaint support an inference that Sung Woo had no actual authority to waive the plaintiff's compensation.

"Apparent authority is that semblance of authority that a principal, through its own acts or inadvertences, causes or allows third persons to believe the principal's agent possesses."  Id. (emphasis added).  Drawing all reasonable inferences in the

---

[4]The defendant also argues that the alleged contract falls within the Connecticut Statute of Frauds pertaining to contracts that cannot be performed within one year and cites a sentence in the letter.  However, it is not clear on the face of the document that the sentence at issue obligated the plaintiff to perform duties extending beyond one year.

plaintiff's favor, the allegations in the Complaint support an inference that the defendant knew that Sung Woo did not have the authority to waive all of the plaintiff's compensation for the project.  This knowledge, if shown, would be fatal to the defendant's apparent agency defense.

Because the allegations in the Complaint could support a finding of a breach of contract, the motion to dismiss the First Count is being denied.

## C. Second Count - Breach of the Implied Covenant of Good Faith and Fair Dealing

The defendant argues that the plaintiff's claim for a breach of the implied covenant of good faith and fair dealing should be dismissed for three reasons: first, that the New York Statute of Frauds makes the contract unenforceable; second, that the plaintiff fails to allege a breach of the covenant of good faith and fair dealing that is distinct from its express breach of contract claim; and third, that the plaintiff fails to allege that the defendant engaged in conduct that deprived it of the "fruits" of the agreement.

With respect to the defendant's argument that the contract is unenforceable pursuant to the New York Statute of Frauds, for the reasons discussed above, it is premature to apply the New York Statute of Frauds to the agreement in this case.

The defendant argues that the claim for breach of the implied covenant of good faith and fair dealing is redundant in

10

light of the plaintiff's claim for express breach of contract. See Simon v. Unum Grp., 07 Civ. 11426 (SAS), 2008 U.S. Dist. LEXIS 47719, at *8 (S.D.N.Y. June 18, 2008) ("If the allegations underlying the breach of the implied covenant of good faith claim and the breach of contract claim are the same, then the good faith claim is 'redundant' and cannot survive a motion to dismiss.") A breach of the implied covenant of good faith and fair dealing occurs "only where one party's conduct, though not breaching the terms of the contract in a technical sense, nonetheless deprived the other party of the benefit of its bargain." Pearce v. Manhattan Ensemble Theater, Inc., 528 F. Supp. 2d 175, 180-81 (S.D.N.Y. 2007) (quoting Sauer v. Xerox Corp., 95 F. Supp. 2d 125, 132 (W.D.N.Y. 2000)).

Here, the plaintiff has alleged that the defendant expressly breached the terms of the contract by removing it from the sales process despite language in the letter giving it exclusivity in the sales process.  The defendant contends that, assuming there is an enforceable contract, it did not breach that contract because it submitted the final bid to the plaintiff's agent. Should the defendant prevail on that argument, the plaintiff could seek to recover for a breach of the implied covenant of good faith and fair dealing based on the allegation that the final bid excluded any compensation for the plaintiff.  It is permissible for the plaintiff to proceed in the alternative.

The defendant argues that there is no allegation that it breached an implied promise that was "so interwoven into the contract as to be necessary for effectuation of the purposes of the contract." <u>Thyroff v. Nationwide Mut. Ins. Co.</u>, 460 F.3d 400, 407-08 (2d Cir. 2006).  The plaintiff alleges that it entered into a contract with the defendant that would allow it to take the lead in developing a sales opportunity for the defendant with the Korea Hydro Nuclear Power Corporation.  The plaintiff further alleges that it invested significant resources in ensuring that the defendant would get the business, and that the defendant submitted its final bid without receiving the plaintiff's approval and failed to include compensation for the plaintiff in the bid price.  Assuming there was no breach of an express term of an agreement, the plaintiff has alleged facts sufficient to support a conclusion that there was an implied promise that the defendant would not deprive the plaintiff of any and all compensation for the work it had done.

Because the allegations in the Complaint could support a finding of a breach of the implied covenant of good faith and fair dealing, the motion to dismiss the Second Count is being denied.

### D.  Third Count - Unjust Enrichment

The defendant argues that the plaintiff's claim for unjust enrichment should be dismissed for two reasons: first, that it is

barred by the New York Statute of Frauds; and second, that the
plaintiff has failed to allege the reasonable value of its
services.

As discussed above, it is premature to determine whether the
New York Statute of Frauds is applicable.

The defendant argues that to state a claim for unjust
enrichment the plaintiff must allege the reasonable value of its
services.  Under New York law, to state a claim for unjust
enrichment a plaintiff must identify the reasonable value of the
services rendered rather than relying on contract damages.  See
Fallon v. McKeon, 646 N.Y.S.2d 109, 110 (N.Y. App. Div. 1996).
Under Connecticut law, a plaintiff must show "that the defendant
[was] benefited, that the benefit was unjust in that it was not
paid for by the defendant[], and that the failure of payment
operated to the detriment of the plaintiff."  Burns v. Koellmer,
11 Conn. App. 375, 383 (1987).  Here, the plaintiff fails to
identify the reasonable value of its services.  Therefore, it has
not stated a claim for unjust enrichment under New York law.

The defendant argues that Connecticut law also requires the
plaintiff to allege the reasonable value of its services and
cites J&N Elec., Inc. v. Notkins, No. 085020144, 2009 Conn.
Super. LEXIS 1382, at *4 (Conn. Super. Ct. May 20, 2009) and
Ravski v. Conn. State Med. Soc'y, IPA, Inc., No. 044000582S, 2005
Conn. Super. LEXIS 200, at *16-17 (Conn. Super. Ct. Jan. 26,

2005).  These cases stand for the proposition that a plaintiff cannot incorporate allegations of breach of an express contract into its unjust enrichment claim because lack of an express contract is a "precondition to recovery based on unjust enrichment." Ravski, 2005 Conn. Super. LEXIS 200, at *18 (dismissing unjust enrichment claim because the count alleging unjust enrichment incorporated paragraphs which alleged breach of an express contract); see also J&N Elec., Inc., 2009 Conn. Super. LEXIS 1382 at *4 (dismissing unjust enrichment claim because "plaintiff clearly alleges the existence and breach of an express contract in the count seeking unjust enrichment, contrary to the rule that alternative causes of action must be pleaded in separate counts.").  These cases do not require that a plaintiff identify the reasonable value of services rendered within the complaint.  They do require, however, that a plaintiff not make allegations inconsistent with the legal claim being pursued.

In the Third Count, which alleges unjust enrichment, the plaintiff incorporates paragraphs 1 through 56 of the Complaint. In paragraph 23 of the Complaint plaintiff states that "[o]n August 20, 2007, [the plaintiff] and [the defendant] entered into a formal, written contract (the "Letter Agreement")."  In paragraph 49 of the Complaint, the plaintiff alleges that "[i]n breach of the terms of the Letter Agreement, [the defendant] did not seek or obtain approval from [the plaintiff] before

14

submitting the final offer to Sung Woo." Because lack of an express contract is a precondition to recovery based on unjust enrichment, allegations to the contrary incorporated into the count require dismissal.

Because the choice of law issue remains unsettled and the plaintiff's unjust enrichment claim would be dismissed under either New York law or Connecticut law, the motion to dismiss is being granted as to the Third Count, but with leave to replead.

### E.  Fourth Count - Quantum Meruit

The defendant argues that the plaintiff's claim for quantum meruit should be dismissed for two reasons: first, that it is barred by the New York Statute of Frauds; and second, that the plaintiff has failed to allege the reasonable value of its services.

As discussed above, it is premature to determine whether the New York Statute of Frauds is applicable.

> In order to recover in quantum meruit under New York law, a claimant must establish "(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services."

Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 175 (2d Cir. 2005) (quoting Revson v. Cinque & Cinque, P.C., 221 F.3d 59, 69 (2d Cir. 2000)). Also, a claim will be dismissed where the complaint is "entirely devoid of any indication of what [a plaintiff] spent or, in fact, of the

reasonable value of any services which it may have performed."
<u>Martin H. Bauman Assoc. v. H&M Intl. Transp.</u>, 171 A.D.2d 479, 484
(N.Y. App. Div. 1991).

The plaintiff failed to allege the reasonable value of its
services.  Therefore, it has failed to state a claim for quantum
meruit under New York law.

Under Connecticut law, "[w]hen there is an express contract
entered into by the parties, the plaintiff cannot recover under
the theory of quantum meruit."  <u>Schreiber v. Connecticut Surgical
Grp., P.C.</u>, 96 Conn. App. 731, 739-40 (2006).  As discussed
above, such a claim has not been stated where the plaintiff has
alleged facts within the count that are inconsistent with the
legal claim being pursued.

As with the unjust enrichment claim, the plaintiff
incorporated paragraphs 1 through 56 of the Complaint into the
Fourth Count, the claim for quantum meruit.  Some of those
paragraphs allege an express contract.  Thus, under Connecticut
law, the quantum meruit claim must be dismissed.

Because the plaintiff's quantum meruit claim would be
dismissed under either New York law or Connecticut law, the
motion to dismiss is being granted as to the Third Count with
leave to replead.

**F.  Fifth Count - Promissory Estoppel**

The defendant argues that the plaintiff's claim for

16

promissory estoppel should be dismissed for three reasons: first, that it is barred by the New York Statute of Frauds; second, that the promises between the parties are not definite enough to support promissory estoppel; and third, that it was unreasonable to rely on vague and indefinite promises.

As discussed above, it is premature to determine whether the New York Statute of Frauds is applicable.

The defendant argues that its promise to appoint the plaintiff to the lead team and its promise of exclusivity is vague, indefinite, and leaves out numerous terms that one would typically expect to be included.

To prevail on a cause of action for promissory estoppel a plaintiff must establish "1) a clear and unambiguous promise; 2) reasonable and foreseeable reliance on that promise; and 3) injury to the relying party as a result of the reliance."  Kaye v. Grossman, 202 F.3d 611, 615 (2d Cir. 2000); see also D'Ulisse-Cupo v. Bd. of Dirs. of Notre Dame High Sch., 202 Conn. 206, 213 (1987) ("A fundamental element of promissory estoppel . . . is the existence of a clear and definite promise which a promisor could reasonably have expected to induce reliance.").

The plaintiff alleges that it informed the defendant of the potential opportunity to sell its products in South Korea.  It further alleges that it required the defendant to confirm, in writing, that the plaintiff would serve as the exclusive

17

representative with respect to the potential sale before it would move forward.  The letter that was signed on August 20, 2007 explicitly states that it is confirming previous verbal agreements.  The plaintiff further alleges that the plaintiff and the defendant had other exclusivity agreements pursuant to which the plaintiff distributed the defendant's products.  The allegations, taken together with the conversations between the parties and their prior course of dealing, support a reasonable inference that the letter agreement created a clear and unambiguous promise.

The defendant argues that it was unreasonable for the plaintiff to rely on vague and indefinite promises.  However, the Complaint alleges that the parties continued to work closely together towards culmination of a deal.  Thus the plaintiff was not simply relying on vague and indefinite promises but on promises made in the context of a continuing joint effort.

Therefore, the motion to dismiss the Fifth Count is being denied.

### G.  Sixth Count - Fraudulent Misrepresentation

The defendant argues that the plaintiff's fraudulent misrepresentation claim should be dismissed for three reasons: first, that the plaintiff failed to plead with particularity a misrepresentation of fact by the defendant; second, that the plaintiff cannot show that the defendant never intended to

18

fulfill its promise to make the plaintiff the exclusive representative on the project; and third, that the allegations do not give rise to a strong inference that the defendant never intended to perform under the purported agreement.

The defendant argues that the plaintiff failed to allege the speaker or the time or place of the misrepresentations.  To the contrary, the plaintiff clearly identifies the letter, signed by Steve Halliwell - Manager of Government Business on August 20, 2007, as at least one source of misrepresentations by the defendant.  The letter states that the plaintiff will be appointed the "lead team with exclusivity in the sales process for the project."

The defendant argues that, because the purported misrepresentations are identical to the terms of the alleged contract, they cannot support a claim for fraudulent misrepresentation.  Under New York law, intentionally false statements indicating an intent to perform under a contract are not sufficient to support a claim for fraud. Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc., 98 F.3d 13, 19 (2d Cir. 1996).  Under Connecticut law, however, "whether [the defendant] fraudulently induced the plaintiff to agree to a proposal, and whether the defendant breached the contract, are independent and distinct claims."  Greenwich Interiors, LLC v. DCM Sys., LLC, No. FSTCV085009200S, 2009 WL

765529 at *4 (Conn. Super. Feb. 25, 2009).  This is because "the economic loss doctrine does not apply to causes of action based upon negligent or intentional torts considered independent of the contractual breach even though a breach of contract action exists." Id. at *3.

The defendant argues that the plaintiff cannot show it never intended to fulfill its promise to make the plaintiff the exclusive representative on the project.  As noted above, under New York law "general allegations that defendant entered into a contract while lacking the intent to perform are insufficient to support a fraud claim." Miller v. Holtzbrinck Publishers, LLC, No. 09-0919, 2010 U.S. App. LEXIS 9893, at *5 (2d Cir. May 14, 2010).  The defendant cites Midsun Grp. v. Jem Dev., LLC, No. 044000356, 2009 Conn. Super. LEXIS 1259, at *11-13 (Conn. Super. Ct. May 5, 2009) for the proposition that Connecticut law is the same as New York law on this point.  Midsun, however, merely stands for the principle that a plaintiff must prove both that a defendant stated it would adhere to the terms of the agreement and that it "had no intention of doing so at the time the contracts were consummated and the promises were made."  2009 Conn. Super. LEXIS 1259, at *11-12.  Midsun discusses the heightened evidentiary standard a plaintiff needs to meet to prove a claim for fraud.  However, Midsun was decided after trial, i.e. after the plaintiff had the opportunity to conduct

discovery and present its evidence.  The plaintiff here should be provided the same opportunity with respect to this point.

The defendant argues that the plaintiff's allegations do not support a strong inference that it did not intend to fulfill its contractual obligations, and in fact, suggest the opposite.  For instance, the plaintiff alleges that the defendant continued to work with it during the bidding process and submitted an initial bid that included compensation.  At this stage in the litigation, however, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).

Because the allegations in the Complaint could support a finding of fraudulent misrepresentation, the motion to dismiss the Sixth Count is being denied.

### H.  Seventh Count - Negligent Misrepresentation

The defendant argues that the negligent misrepresentation claim should be dismissed for three reasons: first, that New York law requires a special relationship between the parties as an element of a claim for negligent misrepresentation; second, that the claim is indistinguishable from the breach of contract claim; and third, that it fails to satisfy the heightened pleading standards of Fed. R. Civ. P. 9(b).

While New York law does require a special relationship between the parties, see B&M Linen, Corp. v. Kannegiesser, USA, Corp., 679 F. Supp. 2d 474, 483 (S.D.N.Y. 2010), Connecticut law

does not.  See Sturm v. Harm Dev., LLC, 2 A.3d 859, 872-73 (Conn. 2010).  As a result, this claim survives unless it is determined that New York law applies.

The defendant argues that the negligent misrepresentation claim is, in substance, the breach of contract claim restated. Under Connecticut law, "[a] negligent misrepresentation action does not seek to enforce the underlying contract; rather, it seeks damages for reliance on misrepresentations that may have been made in relation to that contract.  This critical distinction sets the tort action apart from a contract action and makes the claim worthy of independent review." East River Energy, Inc. v. Gaylord Hosp., Inc., No. NNHCV095029078S, 2011 WL 3198251 at *11 (emphasis in original).  Because the negligent misrepresentation claim is distinct under Connecticut law, it survives the motion to dismiss.

The defendant argues that the negligent misrepresentation claim fails to satisfy the heightened pleading standards of Fed. R. Civ. P. 9(b) for the same reasons it gave with respect to the fraudulent misrepresentation claim. The defendant's argument is not persuasive for the reasons discussed above.

Because the allegations in the Complaint could support a finding of negligent misrepresentation, the motion to dismiss the Seventh Count is being denied.

**I.  Eighth Count - CUTPA**

22

The defendant argues that the CUTPA claim should be
dismissed for three reasons: first, because New York law applies;
second, because the defendant's actions were incidental to its
true trade or business and were not intimately associated with
Connecticut; and third, because the conduct alleged does not rise
to the level of a deceptive practice or conduct that would
violate CUTPA.

As discussed above, the choice-of-law determination must be
made at a later stage of this case.

The defendant argues that its actions were incidental to its
true trade or business.  "A claim under CUTPA requires that [the]
plaintiff allege that [the] defendant engaged in 'unfair methods
of competition and unfair or deceptive acts or practices in the
conduct of any trade or commerce'" where trade or commerce is
defined as "'the advertising, the sale or rent or lease, the
offering for sale or rent or lease, or the distribution of any
services and any property . . ." PTI Assocs., LLC v. Carolina
Int'l Sales Co., 3:09-cv-849, 2010 U.S. Dist. LEXIS 5922, at *14
(D. Conn. Jan. 26, 2010) (quoting Conn. Gen. Stat. § 42-110b).
"There is no viable claim under CUTPA when the practice
complained of is incidental to the true trade or business
conducted." Brandewiede v. Emery Worldwide, 890 F. Supp. 79, 81
(D. Conn. 1994).

Brandewiede is inapposite to the current case.  In

Brandewiede the court held that leasing commercial aircraft was incidental to an air freight and cargo business. This case involves a contract for the sale and distribution of specialized x-ray equipment. The defendant is in the business of manufacturing and selling x-ray equipment. Therefore, the contract is directly related to its business.

The defendant also argues that its actions are not intimately associated with Connecticut.

> There are two approaches that courts have employed to evaluate whether a violation of CUTPA occurred in Connecticut. First, this Court has previously held that CUTPA is violated where the violation "is tied to a form of trade or commerce intimately associated with Connecticut . . ." Alternatively, where Connecticut choice of law principles are applicable, those principles dictate the application of Connecticut law, which provides that a tort is deemed to have occurred where the 'economic impact' of the injury is felt.

PTI Assocs., LLC, 2010 U.S. Dist. LEXIS 5922, at *15 (quoting Victor G. Reiling Assocs. v. Fisher-Price, Inc., 406 F. Supp. 2d 175, 200 (D. Conn. 2005)) (citations omitted). There is no dispute that the economic impact of the injury was felt by the plaintiff in Connecticut. Because the court has not decided the choice-of-law question, the defendant's argument regarding whether the trade or commerce is intimately associated with Connecticut must be addressed at a later stage in this case.

The defendant argues that its conduct does not rise to the level of deceptive practice covered by the statute because, at most, the claim is one for breach of contract. The Complaint

24

alleges far more than a simple breach of contract.  The plaintiff alleges that the defendant took advantage of the plaintiff's experience and contacts with South Korea and Canberra throughout the course of the negotiations, all the while intending to cut the plaintiff out of the deal.  The plaintiff alleges that the defendant, acting in bad faith, circumvented it at the last minute to submit a bid that provided for zero compensation for the plaintiff.  The plaintiff's allegations are sufficient to support a claim for a deceptive practice.

Because the allegations in the Complaint could support a claim under the CUTPA, the motion to dismiss the Eighth Count is being denied.

### J.  Ninth Count - Unfair Competition

The defendant argues that the unfair competition claim must be dismissed because the plaintiff and the defendant lacked the competitive relationship essential to an unfair competition claim under New York law.  "Although Connecticut has not addressed the issue, New York does not require direct competition between a plaintiff and a defendant in order to sustain a cause of action for common-law unfair competition."  QSP, Inc. v. Aetna Cas. and Sur. Co., 256 Conn. 343, 370-71 (2001) (citing Berni v. International Gourmet Rests. of America, 838 F.2d 642, 648 (2d Cir. 1988)).  "[I]t is apparent that, at a minimum, standing to bring a [New York unfair competition] claim requires the

potential for a commercial or competitive injury."  <u>Berni</u>, 838
F.2d at 648.  The plaintiff alleges that there was an agreement
under which it would distribute the defendant's products in South
Korea.  The plaintiff further alleges that the defendant took
over that distributorship role by submitting a bid directly to
the plaintiff's agent, Sung Woo.  In doing so, the defendant
caused a commercial injury, i.e. it assumed the plaintiff's
position in the negotiations with the Korea Hydro Nuclear Power
Corporation, depriving the plaintiff of all compensation related
to the agreement.

The defendant argues that the plaintiff never alleges that
the defendant misappropriated the fruits of its labor.  The
plaintiff alleges that it had a special relationship with the
client in South Korea and with Canberra, a business partner in
the deal.  It alleges that it used its influence to enable the
defendant to place a bid, arranging meetings with Canberra and
even petitioning the South Korean government to place the
defendant on an approved vendor list.  In return for its efforts,
the plaintiff anticipated being able to negotiate a sales price
that would provide it with some form of commission.  The
defendant misappropriated the fruits of the plaintiff's labor by
taking advantage of the connections established by the plaintiff
while simultaneously removing the plaintiff from the deal in
violation of the letter agreement.

Because the allegations in the Complaint could support a finding of unfair competition, the motion to dismiss the Ninth Count is being denied.

## III. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is hereby GRANTED with respect to the plaintiff's claims for unjust enrichment (Third Count) and quantum meruit (Fourth Count) and DENIED as to all other counts.  The plaintiff is granted leave to amend its complaint within 30 days.

It is so ordered.

Signed this 29th day of September, 2011 at Hartford, Connecticut.


                              /s/AWT
                        Alvin W. Thompson
                   United States District Judge